Andrew C. Dalton, Esq.
DALTON & ASSOCIATES, P.A.
Cool Spring Meeting House
1106 West 10th Street
Wilmington, DE 19806
Telephone: (302) 652-2050
Facsimile:
adalton@dalton.law


William W. Palmer, Esq. (SBN 146404)
(*Pro Hac Vice Counsel*)
PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761
Facsimile:  (916) 972-0877
wpalmer@palmercorp.com

Jonathan S. Massey, Esq.
Bret R. Vallacher, Esq.
Matthew E. Layden, Esq.
(*Pro Hac Vice Counsel*)
MASSEY & GAIL LLP
1000 Maine Ave. SW
Suite 450
Washington, D.C. 20024
Telephone: (202) 650-5452
Facsimile: (312) 379-0467
jmassey@masseygail.com
bvallacher@masseygail.com
mlayden@masseygail.com

*Attorneys for Plaintiff Vial and proposed Class Members*

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| JAIME VIAL, as representative of the heirs of Rene Correa Borquez and on behalf of other persons similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>BRENDA MAYRACK, in her individual capacity and official capacity as DIRECTOR OF THE OFFICE OF UNCLAIMED PROPERTY OF THE STATE OF DELAWARE, BRIAN WISHNOW, in his official capacity as the Assistant Director Enforcement of the Office of Unclaimed Property; and RICHARD J. GEISENBERGER, in his official capacity as the Secretary of Finance for the State of Delaware,<br><br>     Defendants. | Case No.:  1:24-cv-01313-MN<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## TABLE OF CONTENTS

NATURE AND STAGE OF THIS PROCEEDING ................................................................. 1

L.R. 7.1.1 STATEMENT ...................................................................................................... 1

L.R. 7.1.3(C)(1)(D) SUMMARY ........................................................................................ 1

I.    STATEMENT .............................................................................................................. 3

    A.    Statutory Background ......................................................................................... 3

    B.    DUPL's Constitutionally Inadequate Pre-Deprivation Notice .......................... 5

    C.    DUPL's Constitutionally Inadequate Post-Deprivation Notice ......................... 6

    D.    The Unconstitutional Seizure of Plaintiff's Property......................................... 8

II.   LEGAL STANDARD ................................................................................................... 9

III.  ARGUMENT ............................................................................................................. 10

    A.    Plaintiff Is Likely To Succeed On The Merits ................................................ 10

        1.    Plaintiff Has A Strong Likelihood of Success Under The Due Process Clause Of The Fourteenth Amendment. ................................................. 11

        2.    Plaintiff Has A Strong Likelihood of Success Under The Takings Clause................................................................................................... 15

        3.    Plaintiff Has A Strong Likelihood of Success on His Breach of Fiduciary Duty Claim. .......................................................................... 17

    B.    Plaintiff And The Putative Class Will Suffer Irreparable Harm Without An Injunction. ....................................................................................................... 18

    C.    The Balance Of Equities Is Firmly In Plaintiff's Favor Because Delaware Has No Legitimate Property Interest In The Seized Property..................................... 19

    D.    The Requested Relief Is In The Public Interest. .............................................. 20

CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp*.,
    2019 WL 3855015 (D. Del. Mar. 5, 2019) .................................................................. 10

*American Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*,
    669 F.3d 359, (3d Cir. 2012) .................................................................................... 1

*Brown v. Legal Foundation of Washingto*n,
    538 U.S. 216 (2003) ................................................................................................ 15

*Cedar Point Nursery v. Hassid*,
    594 U.S. 139 (2021) ................................................................................................ 17

*Cerajeski v. Zoeller*,
    735 F.3d 577 (7th Cir. 2013) .................................................................................. 14

*Dillow v. Treasurer of the Commonwealth of Pennsylvania*,
    appeal docketed, No. 24-2004 (3d Cir. June 4, 2024) ........................................... 16

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ................................................................................................ 20

*Genentech, Inc. v. Immunex Rhode Island Corp*.,
    395 F. Supp. 3d 357 (D. Del. 2019) ....................................................................... 10

*Highmark, Inc. v. UPMC Health Plan, Inc*.,
    276 F.3d 160 (3d Cir. 2001) ................................................................................... 10

*In re Tropicana Ent., LLC*,
    520 B.R. 455, 470 (Bankr. D. Del. 2014) .............................................................. 17

*In re USA Detergents, Inc*.,
    418 B.R. 533 (Bankr. D. Del. 2009) ...................................................................... 17

*Jacobs v. United States*,
    290 U.S. 13 (1933) .................................................................................................. 15

*Jones v. Flowers*,
    547 U.S. 220 (2006) .......................................................................................... 12, 14

*Kim v. Hanlon*,
    99 F.4th 140 (3d Cir. 2024 ..................................................................................... 10

*Knick v. Township of Scott, Pa*.,
    588 U.S.180 (2019) ................................................................................................. 17

*Kolton v. Frerichs*,
  869 F.3d 532 (7th Cir. 2017) ........................................................................... 16

*Kremen v. Cohen*,
  337 F. 3d 1024 (9th Cir. 2003) ....................................................................... 20

*Malone v. Brincat*,
  722 A.2d 5 (Del. 1998) ................................................................................... 17

*Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*,
  876 F.3d 481 (3d Cir. 2017) ........................................................................... 15

*Mennonite Bd. of Missions v. Adams*,
  462 U.S. 791 (1983) ........................................................................................ 13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ............................................................................. 11, 12, 13

*Murr v. Wisconsin*,
  582 U.S. 383, 392 (2017) ................................................................................ 16

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................ 10

*Olson v. United States*,
  292 U.S. 246 (1934) ........................................................................................ 15

*Phillips v. Washington Legal Foundation*,
  524 U.S. 156 (1998) ........................................................................................ 15

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017) ........................................................................... 10

*SeaboardAirLine R. Co. v. United States*,
  261 U.S. 299 (1923) ........................................................................................ 15

*Simon v. Weissmann*,
  301 F. App'x 107 (3d Cir. 2008) .................................................................... 16

*Singer Mgmt. Consultants, Inc. v. Milgram*,
  650 F.3d 223 (3d Cir. 2011) ........................................................................... 10

*Sniadach v. Family Fin. Corp. of Bay View*,
  395 U.S. 337 (1969) ........................................................................................ 13

*Springtree Apartments, ALPIC v. Livingston Parish Council*,
  207 F. Supp. 2d 507 (M.D. La. 2001) ............................................................ 18

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
    535 U.S. 302 (2002).............................................................................................. 17

*Taylor v. Chiang*, 2007 WL 1628050 (E.D. Cal. June 1, 2007),
    *vacated as moot*, 2007 WL 3049645 (E.D. Cal. Oct. 18, 2007),
    *aff'd*, 525 F.3d 1288 (9th Cir. 2008)............................................................. 15, 18

*Taylor v. Westly*,
    488 F.3d 1197 (9th Cir. 200 ...................................................................... 14, 18, 19

*Taylor v. Yee*,
    ___ U.S. ___, 136 S. Ct. 929 (2016).............................................................. 14, 15

*Temple-Inland, Inc. v. Cook*,
    192 F.Supp.3d 527 (D. Del. 2016 ............................................................ 2, 12, 19

*Tulsa Pro. Collection Servs., Inc. v. Pope*,
    485 U.S. 478 (1988)............................................................................................ 12

*United States Trust Co. of N.Y. v. New Jersey*,
    431 U.S. 1 (1977)................................................................................................ 19

*United States v. 564.54 Acres Land*,
    441 U.S. 506 (1979)............................................................................................ 15

*United States v. James Daniel Good Real Property*,
    510 U.S. 43 (1993).......................................................................................... 12, 13

*United States v. Naftalin*,
    441 U.S. 768 (1979)............................................................................................ 20

*United States v. Winstar Corp.*,
    518 U.S. 839 (1996)............................................................................................ 19

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
    449 U.S. 155 (1980)............................................................................................ 16

*Western Union Telegraph Company v. City of Davenport*,
    97 U.S. 369 (1878)............................................................................................. 20

*York Lingings v. Roach*,
    1999 WL 608850 (Del. Ch. July 28, 1999) ...................................................... 17

**Statutes**

15 U.S.C. § 77.................................................................................................... 20

15 U.S.C. § 78.................................................................................................... 20

**Other Authorities**

12 Del. Code § 1130 ....................................................................................................... 1

12 Del. Code § 1136 ....................................................................................................... 4

12 Del. Code § 1142 .................................................................................................... 3, 5

12 Del. Code § 1148 ............................................................................................... 5, 6, 12

12 Del. Code § 1150 ..................................................................................................... 6, 7

12 Del. Code § 1154 ....................................................................................................... 6

12 Del. Code § 1165 ....................................................................................................... 6

**16**

Black's Law Dictionary (12th ed. 2024) ......................................................................... 4

T. Conrad Bower, *Inequitable Escheat?: Reflecting on Unclaimed Property Law and the Supreme Court's Interstate Escheat Framework*, 74 Ohio St. L.J. 515, 528 (2013) .............. 5

## NATURE AND STAGE OF THIS PROCEEDING

Plaintiff Jaime Vial (as legal representative of the heirs of Rene Correa Borquez) brings this action on behalf of himself and all others similarly situated (the putative "Class") against Defendants Brenda Mayrack, in her individual capacity and official capacity as the Director of the Office of Unclaimed Property of the State of Delaware ("Director"), Brian Wishnow, in his official capacity as the Assistant Director Enforcement of the Office of Unclaimed Property, Richard J. Geisenberger, in his official capacity as the Secretary of Finance for the State of Delaware, and Colleen C. Davis, in her official capacity as the Treasurer for the State of Delaware (collectively, "Defendants").  Plaintiff seeks a temporary restraining order and a preliminary injunction against Delaware's escheatment scheme set forth in its Unclaimed Property Law, 12 Del. Code §§ 1130 *et seq.*, and other rules set forth in unpublished manuals, regulations, and practices (hereinafter the "DUPL" or "Statute").

## L.R. 7.1.1 STATEMENT

The parties, including Delaware counsel, conferred with respect to this motion, and Defendants indicated that they will be opposing the motion.

## L.R. 7.1.3(C)(1)(D) SUMMARY

"The purpose of unclaimed property laws is to provide for the safekeeping of abandoned property and then to reunite the abandoned property with its owner."  *American Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 365 (3d Cir. 2012).  The DUPL frustrates this avowed statutory purpose. Under the DUPL, the Director appropriates the supposedly "abandoned" property of purportedly "unknown" persons without any prior notice, auctions it or otherwise sells it off, and retains the proceeds for the State's own use.  The property in question includes stock and retirement savings accounts, pension plans, contents of safe deposit boxes, wages, refunds, deposits, gift cards, and many other forms of property.  The DUPL deems property

1

"abandoned" following a short period of inactivity and fails to provide constitutionally adequate notice – indeed, no notice at all in most instances – before the Director takes and permanently destroys the property.

The DUPL is generally considered to be one of the nation's most aggressive abandoned property statutes. The Council on State Taxation ("COST") graded all 50 states based on the aggressiveness of their abandoned property laws. Delaware, along with California and Louisiana, received the COST's *lowest* grade: a "D-."[1]  In fact, the U.S. District Court for the District of Delaware held the prior version of the DUPL unconstitutional in 2016, criticizing the State for its "lax" approach and opining that state officials "have engaged in a game of 'gotcha' that shocks the conscience." *Temple-Inland, Inc. v. Cook*, 192 F.Supp.3d 527, 532, 550 (D. Del. 2016) (holding that state's audit of property holder violated substantive due process and refusing to dismiss property holder's taking claim against the state). The court noted that Delaware has a strong financial interest in *not* providing adequate notice to property owners, because it is "legal home to a large share of the nation's corporations" and therefore stands to receive a disproportionate "share of all owner/address unknown abandoned property generated in the United States." *Id*. at 533. "The state government has recognized that 'improved record keeping systems could reduce the level of owner unknown property,' and, if that happened, 'Delaware could see its revenues reduced.'" *Id*.

Currently, the Director holds an estimated **$4 billion** in sales proceeds from supposedly "unclaimed" property owned by "lost and unknown" persons. This property is in fact owned by such famous persons as the pop star Taylor Swift, the award-winning actress Meryl Streep, Donald

---

[1]     https://www.cost.org/globalassets/cost/state-tax-resources-pdf-pages/cost-studies-articles-reports/cost-scorecard--the-best-and-worst-of-state-unclaimed-property-laws-october-2013.pdf.

J. Trump, and Joe Biden.  The State of Delaware purports to be unable to locate and to notify these persons in order to and reunite them with the "unclaimed" property it has appropriated from them.

Plaintiff is a citizen and resident of Chile who received no notice at all before his property (securities with substantial value) was unconstitutionally seized and taken by Defendants under the DUPL. When Plaintiff's property was seized and taken, the DUPL provided no direct mail notice or individualized notice whatsoever to property owners like the Plaintiff alerting them that the State was seizing their property.  *See* 12 Del. Code § 1142 (2016).  The only notice provided by Delaware to property owners was in the form of dense, lengthy newspaper publication inserts using small print (published only in local Delaware newspapers) listing names (sometimes misspelled, partial, or omitted entirely) and partial addresses of property owners, without any description of the property or its value.  *See* Declaration of Jaime Vial ("Vial Declaration"), Exhibit B.  Therefore, even if property owners could discover the information, they could not determine the nature of the seized property and whether it would be worth the effort to recover it.

Foreign property owners like Plaintiff (who is a resident of Chile) would have no practicable access to such local Delaware newspaper notice, which are printed only in English and would have been meaningless to them in any event.  Not until May 2017 did the DUPL provide for direct mail notice to property owners notifying them that their property had been deemed "abandoned" and was subject to seizure by the State.

The DUPL is unconstitutional both on its face and as applied, and Plaintiff's motion should be granted.

## I.    STATEMENT

### A.    Statutory Background

Under the DUPL, property is deemed "abandoned" according to certain dormancy thresholds specified in the Statute, regardless of the owner's state or country of residency.  The

DUPL does not use the traditional understanding of "abandonment" – i.e., the knowing and voluntary "relinquishing of a right or interest with the intention of never reclaiming it."  Black's Law Dictionary (12th ed. 2024).  Delaware uses a short, three-year "dormancy" period to determine whether shares of stock may be deemed dormant and, therefore, "abandoned."  12 Del. Code § 1133(13). Thus, if an account is inactive for three years – for example, if a customer is using a buy-and-hold approach to investment, makes no deposits or withdrawals, receives no dividends (which is not uncommon for many "blue chip" stocks) for three years – the account can be listed as "abandoned."  *See generally* 12 Del. Code § 1136.  Telephone calls or verbal contact with an owner do not by themselves prevent property from being deemed "abandoned." *See* 12 Del. Code § 1136(b)(2).

The DUPL requires that financial institutions and other entities holding so-called "abandoned" property transfer it to the Delaware Office of Unclaimed Property, headed by the Director.  Defendants have outsourced their statutory obligations (including the identification of supposedly "abandoned" property, the provision of direct mail notice to certain property owners, and the management of the website) to private auditors, which are responsible for operating the statutory scheme.  These audit firms are compensated on a contingent-fee basis – typically, 10 to 15 percent of any unclaimed property seized.  (Fees for the seizure of property are paid not by the individual property owner but by other property owners under the DUPL.)  Such a fee structure provides a profit incentive to auditors to aggressively seize as much property as possible and to minimize the provision of notice that would enable private owners to prevent seizure of their property.  The use of contingent fee auditors (which, of course, creates financial incentives for aggressive and unconstitutional seizures of property) is inconsistent with the stated purpose of unclaimed property laws, which is to return property to its rightful owner. The DUPL has become

a "vehicle for aggressive revenue generation" through the combination of reduced abandonment periods, expanded definitions of unclaimed property, and use of contingent-fee unclaimed property auditors.  T. Conrad Bower, *Inequitable Escheat?: Reflecting on Unclaimed Property Law and the Supreme Court's Interstate Escheat Framework*, 74 Ohio St. L.J. 515, 528 (2013).

### B.    DUPL's Constitutionally Inadequate Pre-Deprivation Notice

Prior to May 2017, the Director and the DUPL scheme provided no direct mail notice or individualized notice whatsoever to property owners like the Plaintiff alerting them that the State was about to seize their property. Nor were holders of property required to send such notice.  *See* 12 Del. Code § 1142 (2016).  The only notice provided by Delaware to property owners was in the form of lengthy, dense newspaper publication inserts with the thickness of telephone books, published only in local Delaware newspapers.  *See* Vial Declaration, Exhibit B.  These inserts listed thousands of partial names (and sometimes no names) and partial addresses of property owners, but not a description of the supposedly "abandoned" property or its value.  *See id.* The inserts are inscrutable.  Moreover, foreign citizens such as Plaintiff would have no reason to review local Delaware newspapers, written only in English, and no practicable access to such newspaper notice.  *See* Vial Declaration ¶ 9.

Even today, Delaware provides no direct mail or other form of individualized notice to property owners in connection with the State's seizure of their property and where the property in question is valued at less than $50. If the property to be escheated is a security, the Statute states that "the holder must send notice to the owner regardless of the value of the property."  12 Del. Code § 1148(2).

Post-2017, the DUPL requires, for property in excess of $50, that the holder of the property (such as a bank or other financial services institution) generally must send written notice via first-class U.S. Mail – in other words, not to property owners in foreign countries – to the owner.  *See*

12 Del. Code § 1148-(2). But there are exceptions to even this requirement. The holder's records must indicate an address that is reachable via first-class U.S. Mail, and its records must not include any indication that the address on file is invalid for some reason. 12 Del. Code § 1148(1).

"[O]nce property has been deemed abandoned, the holder turns it over to the state while the original property owner still maintains the right to the property." *American Express Travel Related Services*, 669 F.3d at 365. Thus, although the property is transferred to the state, the Director holds the presumed abandoned property in trust until claimed by the owner or the owner's successor in interest. 12 Del. Code § 1165. Defendants act in the capacity of a trustee and custodian of private funds.

### C.    DUPL's Constitutionally Inadequate Post-Deprivation Notice

After property is transferred to the Director by holders, the DUPL continues to deny owners meaningful notice, even after they have been deprived of their property. In addition, the DUPL denies owners of unclaimed property interest on their seized property. 12 Del. Code § 1154(a). Thus, the DUPL becomes a no-interest loan of private funds to the State.

Post 2017, for property other than money valued at more than $50, the Statute, in theory, requires individualized written notice by the Director as soon as practicable after escheat. *See* 12 Del. Code. § 1150(a). But notice is not required if the Office of Unclaimed Property "determines that the notice would not be received by the owner." 12 Del. Code. § 1150(b). The Director delegates the provision of mail notice to a subcontractor of Delaware's auditor.

After seizing property, the Director places the owner's name and last known address on a purportedly searchable Internet website[2] that property owners may visit if they know it. But the website fails to provide the constitutionally required prior notice before property is seized. It shifts

---

[2] *See* https://unclaimedproperty.delaware.gov/app/claim-search.

the notice burden from the government to the owners to ferret out the information on their property after it has been seized by the Director. Yet it defies common sense to expect out-of-state residents to search a Delaware website when they and their property have no nexus with Delaware. Moreover, the website is rife with technical limitations, and the DUPL does not require the state to post the value of the property on the website (or even a range of values). *See* Declaration of Jan Peters ("Peters Declaration") at ¶¶ 3–16. This is especially true if the property is listed with last name first or if the name is misspelled or abbreviated or if a nickname is used (such as "Bill" for "William" or "Dave" for "David"), or if the property is listed by the name of the institution holding it, rather than the individual owner. *See* Peters Declaration at ¶ 6. Moreover, the website does not include escheated property consisting of money in an amount less than $10. 12 Del. Code § 1150(f)(1). This rule applies, for example, to private papers in safe deposit boxes such as love letters and family photos.

12 Del. Code § 1150(d) requires that the Director place a newspaper ad in a Delaware newspaper advertising the unclaimed property website, providing a toll-free number, and indicating that unclaimed property is available to be claimed from the Office of Unclaimed Property. *See* 12 Del. Code § 1150(d)–(e). But this newspaper notice does not contain the names or addresses of property owners or a description of any property that has been seized. *See* Declaration of Cherese Bayani ("Bayani Declaration"), Ex. A. It is simply a generic notice referring readers to the website. *See id.* There is no reason that a foreign citizen would have occasion to see such a notice in a local Delaware newspaper. Private property is often sold or destroyed before this limited information is posted to the website. Further, the Office of Unclaimed Property may reject claims if, for example, Defendants arbitrarily deem documentation inadequate.

### D.    The Unconstitutional Seizure of Plaintiff's Property.

Plaintiff Jaime Vial is a Chilean engineer and legal representative of the Estate of Rene Correa Borquez.  *See* Vial Declaration at ¶ 1.  There is no nexus between the members of the Borquez family and the State of Delaware.  No member of the family has ever resided in Delaware. *Id*. at ¶ 4.  All the heirs of Mr. Rene Borquez empowered Plaintiff Vial under Chilean law to recover Mr. Borquez's property unlawfully seized by state governments in the United States.  *Id*. at ¶ 10.  Plaintiff Vial has been recognized by the State as the rightful legal representative to seek the return of the seized property belonging to Rene Correa Borquez.  *Id*.

Stocks owned by Mr. Rene Borquez that were seized by Defendants are listed in Exhibit A to the accompanying Declaration of Jaime Vial.  *Id*. at ¶ 6.  The name and address of Mr. Rene Borquez in Chile were associated with all of the accounts, and it would have been practicable to give him, and his heirs individualized notice as to the stocks he owned.  *Id*. at ¶ 5.  But neither Plaintiff, any heir, nor any other representative of Mr. Rene Borquez's or his brother's estates received *any* notice that the Director had seized the above property.  *Id*. at ¶ 8.  No written or published notice was ever received.  *Id*. at ¶¶ 8–9. Had the Director provided Mr. Borquez or his heirs notice of the property seizure, they could have acted to prevent it.  *Id*. at ¶ 8.

In March 2017, Plaintiff, as representative of all the heirs of Rene Correa Borquez, contacted the Office of Unclaimed Property requesting the return of the property.  *Id*. at ¶ 11. Plaintiff supplied the Office of Unclaimed Property with complete documentation in support of his claims, *see id.*, including account information, proof of stock ownership, a copy of Mr. Rene Borquez's Succession/Will, and the identification of each of his heirs.  *See also* Vial Declaration, Ex. B.  Plaintiff engaged in extensive communications with the Office of Unclaimed Property. Vial Declaration at ¶ 12.  Finally, after years of delay, and in response to a lengthy demand letter sent by the American lawyer hired by Plaintiff, *see* Vial Declaration, Exs. D and E, Plaintiff

ultimately received two checks dated January 20, 2023, in the sums of $794,726.87 and $1,778,452.11. *See* Vial Declaration, at ¶ 15; Vial Declaration, Ex. F (copies of said checks).

The final sum received by Plaintiff is grossly inadequate and reflects the unnoticed sale of Plaintiff's stock. It fails to provide compensation for the current market value of the stock and fails to put Plaintiff in the same position monetarily as he would have occupied if the property had not been seized and taken by Defendants. Vial Declaration at ¶ 16.

Currently, Plaintiff and the Borquez family members own other stocks and property, such as bank accounts, that they do not wish to be subject to Defendants' unnoticed property seizure process. *Id*. at ¶ 17. Yet Plaintiffs and Class Members have no way to protect themselves from repetition of the unconstitutional DUPL process as it currently operates to cause irreparable harm to the public.

Plaintiff continues to suffer ongoing injury from the DUPL. He is the owner of and legal representative for additional property potentially vulnerable to seizure and taking under the DUPL. *Id*. at ¶ 18. He is required to monitor that property continuously in order to ensure that the Director does not attempt to seize it. *Id*. He is incurring, and will continue to incur, the real and concrete cost of having to constantly monitor his property to avoid escheat, including retention of counsel in the United States. The DUPL also deters Plaintiff from acquiring further property that might be subject to seizure under the DUPL. Absent the DUPL, Plaintiff would take concrete steps toward the acquisition of other property in the United States. *Id*. at ¶ 20.

## II.    LEGAL STANDARD

"To obtain any preliminary injunction, a plaintiff must show (1) he will likely succeed on the merits; (2) he will likely suffer irreparable injury; (3) the balance of equities favors him; and (4) the injunction serves the public interest." *Kim v. Hanlon*, 99 F.4th 140, 154 (3d Cir. 2024). The first two prongs are "gateway factors"—prerequisites to be "balance[d]" against the remaining

prongs. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). When the State is a defendant, the preliminary injunction factors of harm to the opposing party and public interest are combined. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

"A request for a TRO is governed by the same general standards that govern the issuance of a preliminary injunction." *Abbott Cardiovascular Sys., Inc. v. Edwards Lifesciences Corp*., C.A. No. 19-149 (MN), 2019 WL 3855015, at *1 (D. Del. Mar. 5, 2019) (internal quotation marks and citations omitted). "Where, as here, the opposing party has notice of the motion for a temporary restraining order, the court applies to the motion the same standards that apply to motions for preliminary injunctions." *Genentech, Inc. v. Immunex Rhode Island Corp*., 395 F. Supp. 3d 357, 366 (D. Del. 2019).

## III.    ARGUMENT

### A.    Plaintiff Is Likely To Succeed On The Merits

In order to demonstrate that there is a likelihood they will prevail on the merits, parties must "prove a prima facie case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc*., 276 F.3d 160, 173 (3d Cir. 2001) (citation omitted). This showing "does not mean more likely than not" and instead amounts to a reasonable chance, or probability, of winning. *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011).

Plaintiff has asserted two constitutional claims in this case – due process and takings – and he has a strong likelihood of success under each. In addition, he has a strong likelihood of success on his claim for breach of fiduciary duty against Defendant Mayrack in her capacity as trustee over the private property in her custody.

### 1.    Plaintiff Has A Strong Likelihood of Success Under The Due Process Clause Of The Fourteenth Amendment.

It is black-letter law that *before* any deprivation of property, the Due Process Clause requires a state to provide the holder "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950). In *Mullane*, the Supreme Court held that notice by newspaper publication with respect to known beneficiaries of a trust did not satisfy due process:

> It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint.

*Id.* at 315.

In this case, ***there is no pre-deprivation notice at all***.  Thus, the due process question presented here is even simpler than the issue in *Mullane*.  Defendants seize private property under the DUPL with ***no prior notice whatsoever***.  Plaintiff and his predecessors in interest received no notice at all before their property (securities worth millions of dollars) was unconstitutionally seized by Defendants under the DUPL, even though their names and addresses were readily ascertainable. Even today, persons whose property is valued at less than $50 are not entitled to any notice before or after Delaware seizes that property. *See* 12 Del. Code § 1148-(2).

11

The DUPL violates basic principles of due process. "The right to prior notice"—*before* the State seizes or appropriates property—"is central to the Constitution's command of due process." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993). "[A]ctual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party." *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988) (citation omitted) (emphasis in original). A court in this District has already held the prior Delaware unclaimed property scheme unconstitutional for lack of due process to property holders. *Temple-Inland,* 192 F.Supp.3d at 544.

"[E]ven the temporary or partial impairments to property rights that such encumbrances entail are sufficient to merit due process protection." *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991); *see also Fuentes v. Shevin*, 407 U.S. 67, 86 (1972) ("The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause."). Due process notice is required even when the State has an interest in the revenue generated by the seizure. In *Jones v. Flowers*, 547 U.S. 220 (2006), the Supreme Court held that even where a property owner had failed to pay his taxes, the government could not seize his property without providing meaningful pre-deprivation notice: "*[b]efore* a state may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* at 223 (emphasis added and quoting *Mullane*, 339 U.S. at 313). And even property with a small value is entitled to due process protection. *See Fuentes*, 407 U.S. at 72 (loss of household goods (including clothes, furniture, and children's toys) was significant enough to warrant due process protection); *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 338 (1969) ($34 garnishment).

Defendants' reliance on its generic cartoon-like advertisements directing members of the public to search an unclaimed property website (*see* Bayani Declaration, Ex. A) fails. First, the website offers only *post-deprivation* notice *after* the State has already seized the property. That is unconstitutionally inadequate and improperly puts the onus on the public to find and search a website for the proceeds of their property, if they happen to believe it has been taken by the State. *See James Daniel Good Real Property*, 510 U.S. at 54; *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983); *Fuentes*, 407 U.S. at 85. Further, the website, maintained by profit-driven auditors, is not meaningful notice. It is plagued by technical shortcomings. *See* Peters Declaration at ¶¶ 3–16. And property owners who have received no prior notice that their property has been seized have no reason to look at the State's website to try to identify their appropriated property. *Mullane* held that newspaper advertisements are not constitutionally adequate (except in special circumstances) because "[c]hance alone" brings a person's attention to "an advertisement in small type inserted in the back pages of a newspaper." *Mullane*, 339 U.S. at 315. The same is true of Delaware's website, particularly for residents of other countries and states, who have no reason to consult a Delaware website regarding their property.

Moreover, the DUPL allows Delaware to list seized property without a description or estimate of its value. *See* Peters Declaration at ¶¶ 3–16. Property worth less than $50 is typically aggregated rather than individually listed, so even if owners of property worth less than $50 happen upon the website, they will not find individually identifiable information for their property. In reality, the website conveys no notice at all to property owners and is nothing more than a catalogue of the owners' sold and destroyed property. Delaware has effectively outsourced the provision of notice to private auditors, whose financial interest lies in affording little or no meaningful notice.

Defendants may not rely on private auditors to "relieve[] the State of its constitutional obligation to provide adequate notice." *Jones v. Flowers*, 547 U.S. at 232.

Justices of the U.S. Supreme Court have already expressed constitutional concern about state unclaimed property laws. *See Taylor v. Yee*, ___ U.S. ___, 136 S. Ct. 929, 930 (2016) (Alito, J., joined by Thomas, J., concurring in the denial of certiorari) ("This trend—combining shortened escheat periods with minimal notification procedures—raises important due process concerns. As advances in technology make it easier and easier to identify and locate property owners, many States appear to be doing less and less to meet their constitutional obligation to provide adequate notice before escheating private property. . . . States must employ notification procedures designed to provide the pre-escheat notice the Constitution requires.")*; see also Cerajeski v. Zoeller*, 735 F.3d 577, 582 (7th Cir. 2013) (Posner, J.) (three-year dormancy period for determining abandonment was "a period so short as to present a serious question whether it is consistent with the requirement in the Fourteenth Amendment that property not be taken without due process of law").

In *Taylor v. Westly*, 488 F.3d 1197 (9th Cir. 2007), the Ninth Circuit directed the entry of an injunction against California's Unclaimed Property law for violations of the U.S. Constitution similar to those alleged in this case. *Id.* at 1200–02. The Ninth Circuit rejected California's defense of a similar scheme to acquire ostensibly "unclaimed" property and opined that it did not comply with the "requirement that notice be given *before* an individual's control of his property is disturbed." *Id.* at 1201 (emphasis added). Following the Ninth Circuit's ruling, a federal district court issued a preliminary injunction against California's scheme. *Taylor v. Chiang*, 2007 WL 1628050 (E.D. Cal. June 1, 2007), *vacated as moot*, 2007 WL 3049645 (E.D. Cal. Oct. 18, 2007), *aff'd*, 525 F.3d 1288, 1289 (9th Cir. 2008). *See also Marathon Petroleum Corp. v. Sec'y of Fin.*

14

*for Delaware*, 876 F.3d 481, 488 (3d Cir. 2017) ("[I]n recent years, state escheat laws have come under assault for being exploited to raise revenue rather than to safeguard abandoned property for the benefit of its owners." (citing *Taylor v. Yee*, 136 S. Ct. 929, 930 (2016)) (internal quotation marks omitted)).

> **2.      Plaintiff Has A Strong Likelihood of Success Under The Takings Clause.**

The DUPL is unconstitutional for an additional reason: it purports to authorize Defendants to take private property (such as Plaintiff's valuable stock) without just compensation, in violation of the Fifth Amendment.   Under the DUPL, the Director appropriates private property and permanently divests owners of that property by selling it or otherwise disposing of it. Once this property is auctioned off or destroyed by operation of the DUPL scheme, *the most* the rightful owner could recover under the DUPL is the salvage value or part of the monetary proceeds of the sale—with no compensation for interest or the lost appreciation in the property's value.

The failure to pay compensation for the lost appreciation of property (and interest on appropriated property after its liquidation) violates the longstanding rule under the Fifth Amendment that "compensation must generally consist of the total value of the property when taken, plus interest from that time." *Jacobs v. United States*, 290 U.S. 13, 17 (1933) (quoting *SeaboardAirLine R. Co. v. United States*, 261 U.S. 299, 306 (1923)).   A property owner must be put "'in as good a position pecuniarily as if his property had not been taken.'" *United States v. 564.54 Acres Land*, 441 U.S. 506, 510 (1979) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)).   The Takings Clause protects the time value of money or property as much as it protects the money or property itself. *See Brown v. Legal Foundation of Washingto*n, 538 U.S. 216, 235 (2003); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165-72 (1998); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162 (1980).   In *Cerajeski*, 735 F.3d at 583, and again

in *Kolton v. Frerichs*, 869 F.3d 532, 533 (7th Cir. 2017), the Seventh Circuit held that the failure of an unclaimed property scheme to pay interest represented a taking of property in violation of the Fifth Amendment.

Although the Third Circuit held in an unpublished opinion in *Simon v. Weissmann*, 301 F. App'x 107 (3d Cir. 2008), that the Takings Clause did not require Pennsylvania to pay interest on unclaimed property, that case does not govern here. *Simon* involved the situation where "the identity and/or whereabouts of the property owner [were] unknown during the time the Commonwealth possessed the property." *Id.* at 112. Here, the relevant names and addresses of the property owners of Mr. Borquez stock were at all times easily ascertainable. Indeed, beginning in March 2017, Mr. Borquez's heirs specifically requested the return of the property.

Moreover, *Simon* did not address the issue of a State's obligation to pay just compensation *for the time it uses unclaimed private property for public purposes*. Under the Fifth Amendment, a State may not use private property — even temporarily — for public purposes without paying compensation to the private property owner. Indeed, the "plain language of the Takings Clause 'requires the payment of compensation whenever the government acquires private property for a public purpose.'" *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017) (citation omitted). Nor did *Simon* address the issue of the State's duty to provide compensation for the appreciation in stock value that was lost because of the State's unilateral decision to sell the stock. *See also Dillow v. Treasurer of the Commonwealth of Pennsylvania, appeal docketed*, No. 24-2004 (3d Cir. June 4, 2024) (presenting similar questions as *Simon*).

The Takings Clause is fully applicable to the DUPL scheme despite its custodial nature – i.e., despite the fact that property is held in trust for return to its rightful owner. The State's duty to pay just compensation under the Takings Clause "arises at the time of the taking, regardless of

16

post-taking remedies that may be available to the property owner." *Knick v. Township of Scott, Pa.*, 588 U.S.180, 181 (2019).   Temporary takings of property are still takings, even if limited in duration. "[A] physical appropriation is a taking whether it is permanent or temporary; the duration of the appropriation bears only on the amount of compensation due." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 140 (2021).  *See also Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 322 (2002) ("compensation is mandated" even when government's "use [of property] is temporary").   Plaintiff has received only a fraction of the value of his property from Delaware.  The property of thousands of Class Members has been taken in its entirety, without any notice.  The DUPL is plainly unconstitutional under the Fifth Amendment.

### 3.   Plaintiff Has A Strong Likelihood of Success on His Breach of Fiduciary Duty Claim.

Plaintiff's breach of fiduciary duty claim further bolsters his request for preliminary injunctive relief.  "The elements of a breach of fiduciary duty claim are (1) a fiduciary duty exists and (2) that the fiduciary breached that duty." *In re Tropicana Ent., LLC*, 520 B.R. 455, 470 (Bankr. D. Del. 2014) (quoting *York Lingings v. Roach*, No. 16622, 1999 WL 608850, *2 (Del. Ch. July 28, 1999)). Fiduciary duties include the duties of care, loyalty, and good faith. *In re USA Detergents, Inc*., 418 B.R. 533, 543 (Bankr. D. Del. 2009) (citing *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998)).  Plaintiff has made out a strong claim under those elements.

Defendant Mayrack has a fiduciary duty to the owners of private property seized by the DUPL, which collects property that still belongs to the owners and is held for the benefit of those owners.  Defendant Mayrack breached those duties.  The Director provided neither direct mail notice nor individualized notice whatsoever to the Borquez family or to Plaintiff alerting them that the State was seizing their property.  The Director failed to verify owner information with other databases available to her. The Director exercises control over the payment of claims submitted to

the DUPL and failed to comply with her fiduciary duty toward Plaintiff. She failed to make payment to Plaintiff in timely fashion. Plaintiff waited some six years for payment of his claim and received payment only after going to the expense of hiring American counsel. Even then, the Director failed to provide Plaintiff with a fair valuation of the property at issue. All of these acts and omissions violated the Director's fiduciary duty.

**B.    Plaintiff And The Putative Class Will Suffer Irreparable Harm Without An Injunction.**

The "violation of constitutional rights constitutes irreparable injury as a matter of law." *Springtree Apartments, ALPIC v. Livingston Parish Council*, 207 F. Supp. 2d 507, 515 (M.D. La. 2001). Moreover, Plaintiff and the putative Class risk ongoing irreparable harm to their property if Defendants are allowed to continue to seize and sell personal property under the DUPL. The sale of stock is accomplished with no notice to the shareholder, who is left holding a worthless paper stock certificate with a canceled CUSIP number.

As the Ninth Circuit opined in directing the entry of an injunction against the California unclaimed property scheme, "[o]nce the property is sold, it may be impossible for plaintiffs to reacquire it, thus creating the requisite irreparable harm." *Westly*, 488 F.3d at 1202 (internal quotation omitted). The federal district court (Hon. William B. Shubb) explained, when entering that injunction, that "[w]hen [the government] takes custody of property pursuant to the [unclaimed property law], even temporarily, certain rights associated with ownership are lost which are not compensable in money damages." *Chiang*, 2007 WL 1628050, at *2. For example, "when securities are transferred out of the owner's name by the state, the owner is deprived of the right to vote his or her shares in important matters of corporate governance." *Id*. In addition, "[w]hile the state holds those securities, the owner is deprived of the ability to sell them." *Id.* "As another example, when the contents of a safe deposit box are seized, the owner is deprived of the

18

use of those articles pending the process he or she must go through to get them returned." *Id.* Indeed, the Director holds the contents of safe deposit boxes for varying periods of time and then auctions them off; the sentimental value of the property (such as family heirlooms or photos) is irreplaceable. Even at this early stage, the relevant facts are beyond dispute and establish irreparable harm.

### C. The Balance Of Equities Is Firmly In Plaintiff's Favor Because Delaware Has No Legitimate Property Interest In The Seized Property.

The rights of property owners to their property greatly outweigh the State's interest in using that property as a revenue source while it fails to notify the owner of its possession. Given the State's seizure of property with inadequate notice under the DUPL, it has no legitimate interest in the "protection" of seized property for the owner's benefit. As a court in this District opined in striking down a statutory predecessor of the DUPL, "unclaimed property laws were never intended to be a tax mechanism whereby states can raise revenue as needed for the general welfare. States violate substantive due process if the sole purpose of enacting an unclaimed property law is to raise revenue." *Temple-Inland,* 192 F.Supp.3d at 548. "There is no lack of funding exception to the Due Process Clause." *Taylor v. Westly*, 402 F.3d 924, 936 (9th Cir. 2005) (internal quotation omitted).

Far from supporting Defendants, the government's own fiscal self-interest (as well the financial interest of the private auditors the State has incentivized to administer its scheme) support Plaintiff's request for relief. The Supreme Court has long expressed constitutional "concern with governmental self-interest" when "the State's self-interest is at stake.'" *United States v. Winstar Corp.*, 518 U.S. 839, 896 (1996) (quoting *United States Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 26 (1977)). Thus, the equities are firmly in favor of Plaintiff and the putative class.

**D.      The Requested Relief Is In The Public Interest.**

By undermining property rights, the DUPL also interferes with the efficient operation of securities markets, which disserves the public interest. The property seized by the Director includes securities subject to extensive federal regulation under the Securities Act of 1933, 15 U.S.C. §§ 77a-77bbb, and the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a-78hh.  These statutes are designed "to protect investors" and "to promote ethical standards of honesty and fair dealing," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976)—not to allow states to appropriate the property of unwary investors without adequate notice or disclosures. *See United States v. Naftalin*, 441 U.S. 768, 775 (1979) (observing that the securities laws were meant "to restore the confidence" of investors that their property would be secure).  Unauthorized stock transfers are prohibited. *Western Union Telegraph Company v. City of Davenport*, 97 U.S. 369, 372 (1878); *Kremen v. Cohen*, 337 F. 3d 1024, 1035 (9th Cir. 2003).  Defendants' actions frustrate the federal statutory purposes and undermine investor confidence in the security of their property.

## CONCLUSION

For the preceding reasons, the motion for temporary restraining order and preliminary injunction should be granted, and this Court should enter an order of prospective declaratory and injunctive relief.

Dated: December 30, 2024                    Respectfully submitted,


                                                          */s/ Andrew C. Dalton*
                                                          Andrew C. Dalton, Esq.
                                                          DE Bar No: 5878
                                                          DALTON & ASSOCIATES, P.A.
                                                          Cool Spring Meeting House
                                                          1106 West 10th Street
                                                          Wilmington, DE 19806
                                                          Telephone: (302) 652-2050
                                                          Email: adalton@dalton.law

William W. Palmer, Esq.
(*Pro Hac Vice Counsel*)
PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761
Email: wpalmer@palmercorp.com

Jonathan S. Massey, Esq.
(*Pro Hac Vice*)
Bret R. Vallacher, Esq.
(*Pro Hac Vice*)
Matthew E. Layden, Esq.
(*Pro Hac Vice*)
MASSEY & GAIL LLP
1000 Maine Ave. SW
Suite 450
Washington, D.C. 20024
Telephone: (202) 650-5452
Email: jmassey@masseygail.com
Email: bvallacher@masseygail.com
Email: mlayden@masseygail.com

*Attorneys for Plaintiff Vial and Class Members*

21

## **<u>CERTIFICATE OF SERVICE</u>**

I, Andrew C. Dalton, hereby certify that on this 30th day of December, 2024, filed the foregoing Memorandum In Support of Motion for Temporary Restraining Order and Preliminary Injunction with the Clerk of Court using the CM/ECF system, and served the same documents via process server on Defendants.

*/s/ Andrew C. Dalton*
Andrew C. Dalton
Attorney for Plaintiff