Andrew C. Dalton
DALTON & ASSOCIATES, P.A.
Cool Spring Meeting House
1106 West 10th Street
Wilmington, DE 19806
Telephone: (302) 652-2050
adalton@dalton.law

William W. Palmer, Esq.
(*Pro Hac Vice Counsel*)
PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761
wpalmer@palmercorp.com

Jonathan S. Massey
Bret R. Vallacher
Matthew E. Layden
(*Pro Hac Vice Counsel*)
MASSEY & GAIL LLP
1000 Maine Ave. SW
Suite 450
Washington, D.C. 20024
Telephone: (202) 650-5452
jmassey@masseygail.com
bvallacher@masseygail.com
mlayden@masseygail.com

*Attorneys for Plaintiff Jaime Vial and Class Members*

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| JAIME VIAL, as representative of the heirs of Rene Correa Borquez and on behalf of other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRENDA MAYRACK, in her individual capacity and official capacity as DIRECTOR OF THE OFFICE OF UNCLAIMED PROPERTY OF THE STATE OF DELAWARE, BRIAN WISHNOW, in his official capacity as the Assistant Director Enforcement of the Office of Unclaimed Property; and RICHARD J. GEISENBERGER, in his official capacity as the Secretary of Finance for the State of Delaware,<br><br>Defendant. | Case No.: 1:24-cv-01313-MN<br><br>**DECLARATION OF JAIME VIAL IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

# DECLARATION OF JAIME VIAL IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, Jaime Vial, declare as follows:

1. My name is Jaime Vial. I am a citizen and resident of Chile and a professional engineer by training. I have personal knowledge of the facts contained herein and if called as a witness I could and would testify to them.

2. I am the legal representative of the heirs of Rene Correa Borquez and have brought this action on behalf of myself and all others similarly situated against the Delaware officials charged with administering the State's Unclaimed Property Law.

3. Mr. Rene Correa Borquez was a Chilean lawyer with many significant investments. He died testate in Chile on May 27, 2006. Mr. Borquez left the entirety of his estate to his brother, Hernan Correa Borquez, who also resided in Chile. Hernan Correa Borquez died testate in Chile, and his heirs all reside in the country of Chile.

4. There is no connection between the members of the Borquez family and the State of Delaware. No member of the family has ever resided in Delaware.

5. Mr. Rene Borquez owned various stocks in financial services accounts across the United States. His name and address in Chile were associated with all of the accounts, and it would have been practicable to give him, and his heirs individualized notice as to the stocks he owned.

6. Prior to 2017, a substantial amount of stock owned by Mr. Borquez was seized as supposedly "abandoned property" under the Delaware Unclaimed Property Law. Attached as Exhibit A hereto is a true and accurate description of at least some of the stock that was seized. Additional property may have been seized as well.

7.  In fact, the property was never "abandoned." Neither Mr. Borquez nor any of his heirs ever intended to abandon or relinquish the property.

8.  Neither I, any heir, nor any other representative of Mr. Rene Borquez's or his brother's estates received any notice that Delaware had seized the property. No written or published notice was ever received. Had the State provided Mr. Borquez or his heirs with notice that she would seize the property, they could have acted to prevent that seizure.

9.  One of my U.S. attorneys showed me a newspaper advertisement (attached hereto as Exhibit B) purporting to provide "notice" to property owners whose stock is in the custody of the Delaware State Director. Until then, I had never seen a similar advertisement in any newspaper, as the Director does not publish newspaper notice in Chile. Even if I had seen this advertisement, I would not have known that the property at issue has been seized, because the advertisement does not list either names or shares of stock that have been seized. Moreover, it would simply never occur to me that a State located in a foreign country with which I have no connection would ever seize the Borquez family stock. Indeed, we never received any notice whatsoever from the State of Delaware either prior to or after the seizure and sale of our stocks and property. An accurate address appears in the Delaware records and I and each member of our family is known to our country, where we pay taxes, own property, own vehicles, etc. In other words, we are not "lost and unknown" to our country of citizenship and residency. We were not contacted by any Delaware agency but instead received contacts from various search or finder firms and eventually we hired a search firm and a local law firm, which works with the search firm, to assist us. We incurred the significant costs of retaining the search firm and their local counsel in Santiago, Chile.

10. All the heirs of Mr. Rene Borquez empowered me under Chilean law to recover Mr. Borquez's property unlawfully seized by state governments in the United States. I have been recognized by Delaware as the rightful legal representative to seek the return of the seized property belonging to Rene Correa Borquez.

11. With the assistance of the search firms and their local South American lawyer, in or about March 2017, I, as representative of all the heirs of Rene Correa Borquez, contacted the Office of Unclaimed Property requesting the return of the property. With the assistance of the search firms and their local counsel, I supplied the Office of Unclaimed Property with complete documentation in support of my claims, including account information, proof of stock ownership, a copy of Mr. Rene Borquez's Succession/Will, and the identification of each of his heirs. Attached as Exhibit C hereto are claim forms I submitted to the State of Delaware.

12. For years the search firms and their counsel engaged on my behalf in extensive communications with the Office of Unclaimed Property in Delaware. The Office demanded additional documentation, including documentation that is not available in Chile. There were no written guidelines, and the requests appeared to be arbitrary. Several members of our family are lawyers, and the Delaware process did not appear to follow any form of law.

13. Finally, after approximately 5 years, the search (finder) firms recommended that I (and my family) retain a United States law firm and lawyer who had litigated against state officials regarding Unclaimed Property Claims. After retaining U.S. Counsel to help address the issues surrounding the claims submitted to the State of Delaware, on or about November 22, 2022, attorney William W. Palmer of the Palmer Law Group, a PLC, wrote to the Office of Unclaimed Property of the Delaware Department of Finance demanding payment requesting information pursuant to the United States Freedom of Information Act ("FOIA") and the Delaware Freedom

of Information Act ("Delaware FOIA"). Attached as Exhibit D hereto is a true and accurate copy of the November 22, 2022, FOIA and Delaware FOIA Request.

14. On or about December 9, 2022, Donna Owens of the Department of Finance for the State of Delaware responded to the November 22, 2022, FOIA and Delaware FOIA Request, denying access to any information because I was and am not a citizen of the State of Delaware. Attached as Exhibit E hereto is a true and accurate copy of the December 9, 2022, FOIA and Delaware FOIA Response.

15. Within approximately 30 days of service of the November 22, 2024, demand letter and federal and state FOIA requests we received word via our U.S. counsel that the Delaware Office of Unclaimed Property had agreed to honor and to pay our claims for the proceeds from the seizure and sale of our property. And finally, after years of delay, I ultimately received two checks dated January 20, 2023, in the sums of $794,726.87 and $1,778,452.11. Attached as Exhibit F hereto are true and accurate copies of those checks.

16. The final sum received by me is grossly inadequate. It fails to reflect the appreciation in the value of the stock (due to stock splits and other increases in market value) and fails to put me and the heirs of Mr. Borquez in the same position monetarily as we would have occupied if the property had not been seized and taken. For example, consider the following examples of securities owned by the Borquez family, which show that the amount of compensation paid by Delaware is grossly inadequate:

| Stock name | Number of shares owned | Amount paid by Delaware | Approx. current share price | Approx. current value |
|---|---|---|---|---|
| Citigroup, Inc. | 4,527 | $37,147 | 51.52 | $233,231 |
| Kimberly Clark Corp. | 624 | $49,590 | 122.77 | $76,608 |

4

| Hilton Hotels Corp. | 1,600 | $70 | 187.38 | $299,808 |
| E.I. Dupont de Nemours & Co. | 85 | $5,439 | 73.68 | $6,263 |
| Allstate Corp. | 54 | $26.35 | 154.88 | $8,364 |
| **Total** | | **$92,273** | | **$624,274** |

17. The Delaware Unclaimed Property Law has caused irreparable injury to me and the Borquez family in additional ways. Stock, after all, represents an ownership interest in a business, and carries with it certain rights fundamental to business ownership. Among those rights are the right to vote on important company matters, such as who serves on the Board of Directors, mergers, and various shareholder referenda that occur from time to time. Also among those rights are the right to receive a share of the distribution of profits (dividends), and the right to receive annual reports, proxy materials, and other information from the company. Once the shares were seized and sold, I and the Borquez family heirs were irreparably deprived of each of these rights.

18. Currently, the Borquez family members and I own other stocks and property, such as bank accounts, that they do not wish to be seized by Delaware. Yet we have no way to protect ourselves from the Delaware Unclaimed Property Law as it currently operates.

19. I am the owner of and legal representative for additional property potentially vulnerable to seizure and taking under the Delaware statute. I am forced to monitor that property continuously in order to ensure that Delaware does not attempt to seize it. I have to constantly monitor that property to avoid seizure.

20. The Delaware statute deters me and the Borquez family members from acquiring further property that might be subject to seizure under the Delaware statute. Absent the Delaware statute, we would take concrete steps toward the acquisition of other property in the United States.

I declare under penalties of perjury of the laws of the United States of America that the foregoing is true and correct.

    Dated: December 06, 2024

    Santiago, Chile

_____
                       Jaime Vial