IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAIME VIAL, et. al,                    )
                                       )
              Plaintiff,               )
                                       )
       v.                              )   C.A. No. 24-1313 (MN)
                                       )
BRENDA MAYRACK, et. al,                )
                                       )
              Defendants.              )

**MEMORANDUM ORDER**

At Wilmington, this 23rd day of March 2026:

On December 4, 2024, Plaintiff Jaime Vial ("Plaintiff") sued Defendants Brenda Mayrack, Brian Wishnow, and Michael R. Smith (together, "Defendants") for violations of his Fifth and Fourteenth Amendment rights under 28 U.S.C. § 1983. (D.I. 1). Plaintiff filed an Amended Complaint on March 20, 2025. (D.I. 38). On April 3, 2025, Defendants filed a motion to dismiss for failure to state a claim. (D.I. 42). The motion has been fully briefed (D.I. 43, 44, 45) and the Court heard oral argument on September 23, 2025. (D.I. 50). After careful review of all materials submitted and arguments made by the parties, Defendants' motion (D.I. 42) will be denied.

I.     **BACKGROUND**

The Court writes for the parties, and assumes familiarity with the background, restating only essential facts here. Defendants are the State Escheator, Assistant Director of Enforcement of the Office of Unclaimed Property, and Secretary of Finance for the State of Delaware; in those capacities, Defendants are responsible for the enforcement of Delaware's Unclaimed Property Law ("DUPL"), which codifies the common law doctrine of escheat. (D.I. 38 ¶¶ 25-27); *Schramm v. Mayrack*, No. 22-1443 (MN), 2024 WL 4299976, *1 n.1 (D. Del. Sept. 26, 2024). The DUPL works to reunite property deemed abandoned with its rightful owner. (D.I. 38 ¶ 2). To that end,

the DUPL requires that holders of property remit that property to the State if the owner fails to show an interest in the property. *See* (*Id*. ¶¶ 34-36). Before doing so, the DUPL requires holders provide notice to the owner using their records; the statute also requires the State Escheator provide notice once they have received the property. 12 Del. C. §§ 1148, 1150. The DUPL's notice provision was amended in 2017 to expand the amount of notice provided to owners before escheat is effected. *Compare* 12 Del. C. § 1150 (2017) (*added by* 81 Del. L. 2017, ch. 1, § 2, eff. Feb. 2, 2017) *with* 12 Del. C. §§ 1130-77 (2016). Plaintiff challenges that process as unconstitutional under the Fifth and Fourteenth Amendments. (D.I. 38 at 43-44, Prayer for Relief).

Plaintiff is a Chilean national who asserts that Defendants' enforcement of the DUPL essentially resulted in his property being "seized and taken," with "no direct mail notice or individualized notice whatsoever." (*Id*. ¶ 14). He sues on his behalf and as the legal representative of the estate of Rene Correa Borquez. (*Id*. ¶ 95). Some time after Borquez's passing, Plaintiff realized that many of the shares that Borquez purchased had been escheated to Delaware. (*Id*. ¶¶ 97-100, 103). After engaging counsel, and claiming ownership of the property, Delaware eventually paid him a sum of approximately $2.6 million dollars; Plaintiff asserts that the actual value of the property is much higher, and that to make him whole, Delaware must pay an additional $11 million dollars. (D.I. 44 at 1). Plaintiff claims this episode is emblematic of the State's scheme to "unconstitutionally seize[] and take[]" property under the DUPL; to begin to recoup his asserted loss, he has begun to purchase shares he believes will, in time, be escheated by Delaware without notice. (D.I. 38 ¶¶ 120-23).

Defendants contest Plaintiff's assertions. They argue that Plaintiff essentially desires a "different system," which the State is not "constitutionally required to provide [] to him." (D.I. 43 at 2-3). Defendants offer the following reasons why this is so: (1) Plaintiff does not have standing,

(2) the statute of limitations bars claims for the Borquez property escheated under the prior version of the DUPL, (3) the Amended Complaint fails to state a takings claim, (4) the Amended Complaint fails to state a due process claim, and if all else fails, (5) the Eleventh Amendment precludes either a challenge to the DUPL or precludes Plaintiff from receiving a money judgment, thereby rendering his claim toothless. (*Id.*). The Court will consider Defendants' arguments before turning its attention to the Eleventh Amendment.

## II.   LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F. 4th 323, 328 (3d Cir. 2022); *Connelly v. Lane Const. Corp.*, 809 F. 3d 780, 787 (3d Cir. 2016). Nonetheless, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Lutz*, 49 F. 4th at 327. The Court does not accept "bald assertions," "unsupported conclusions and unwarranted inferences," *Finkelman v. Nat'l Football League*, 810 F. 3d 187, 202 (3d Cir. 2016), or allegations "so threadbare or speculative that they fail to cross the line between the conclusory and the factual," *Connelly*, 809 F. 3d at 790 (citation omitted). Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 506 U.S. at 678.

## III.    DISCUSSION

### A.    The Amended Complaint Sufficiently Alleges Claims That are Also Timely

Defendants assert that the Plaintiff has failed to state a justiciable claim, as well as a takings claim on its face. (D.I. 43 at 3). But the Amended Complaint sufficiently states those claims, so the motion to dismiss cannot be granted on those bases.

First, Defendants argue Plaintiff lacks standing. The Court is not convinced. To sustain a claim against standing at the motion to dismiss stage, a party need only "allege facts that affirmatively and plausibly suggest that it has standing to sue." *Finkelman,* 810 F. 3d at 194 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F. 3d 140, 145 (2d Cir. 2011)). Plaintiff has done that. As Plaintiff correctly points out, the allegation of monetary injury is indicative of standing, because monetary injuries "readily qualify as concrete injuries under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). And the crux of Plaintiff's complaint is that he has lost $11 million dollars as a result of the DUPL's administration. (D.I. 38 ¶¶ 113-14). But even if the specific allegation of monetary injury were insufficient, the Plaintiff has also made sufficient allegations as to the likelihood of future injury. Indeed, to show standing for future injury, a plaintiff need only plead that "the threatened injury [is] certainly impending to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). That requires that Plaintiff also show there is a "realistic chance – or a genuine probability – that a future injury *will* occur in order for that injury to be sufficiently imminent." *New Jersey Physicians, Inc. v. President of U.S.*, 653 F. 3d 234, 238 (3d Cir. 2011) (emphasis added).

At the motion to dismiss stage, Plaintiff has done that. He alleges the shares he has begun to purchase in order to recoup his complained-of injury were purchased under a buy-and-hold strategy; accordingly, he will not touch them, and in three years' time, Delaware will escheat them.

4

(D.I. 38 ¶¶ 120-23).  Defendants' argument that this requires contingencies to occur is insufficient, because at this stage Plaintiff need only allege a "realistic danger of sustaining a direct injury as a result of the statute's operation," and the Amended Complaint does so.  (D.I. 43 at 14); *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Next, the Defendants ask the Court to dismiss Plaintiff's takings claim.  To survive a motion to dismiss, a takings clause claim must "show that the state's action affected a 'legally cognizable property interest."  *Temple-Inland, Inc. v. Cook*, 192 F. Supp. 3d 527, 551 (D. Del. 2016) (quoting *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F. 3d 359, 371 (3d Cir. 2012)).  The threshold question is "whether the plaintiff has asserted a legally cognizable property interest."  *Nekrilov v. City of Jersey City*, 45 F. 4th 662, 669 (3d Cir. 2022).  In their brief, Defendants argue that the Takings Claim must be dismissed because Plaintiff's claim impermissibly attempts to conflate escheat, which does not describe a property interest, with takings.  (D.I. 43 at 9-10).  Plaintiff contests that argument, stating instead that the body of law Defendants cite is inapposite, as it turns on the principle that that the government need not "compensate the owner for the consequences of his own neglect." *Simon v. Weissmann*, 301 F. App'x 107, 112 (3d Cir. 2008) (quoting *Texaco Inc. v. Short*, 454 U.S. 516, 530 (1982)).  To that end, states Plaintiff, the Amended Complaint properly alleges that: (1) his property was not taken by consequence of his own neglect, and (2) his property was seized, liquidated, and the proceeds used for the public good without just compensation.  (D.I. 44 at 16-18).

At this early stage of litigation, Plaintiff has the better of the argument.  He *has* pled an interest in property – indeed, the Amended Complaint contains a vast table of the shares he believes were taken, their value, and that which he was not adequately compensated for.  (D.I. 38 ¶ 113).

That describes the exact pocketbook injury that invokes just compensation, in contrast to takings claims which fail to describe the value, content, or otherwise cognizable property interest invoking takings. *See Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 636-37 (2023); *see also Schramm v. Mayrack*, No. 22-1443 (MN), 2023 WL 6387889, *6 (D. Del. Sept. 26, 2023). So here, where the Plaintiff has at least rendered allegations as to the compensation he believes he was denied, that suffices against a motion to dismiss. Furthermore, the Amended Complaint alleges that Delaware seized a variety of shares for which it has paid nothing; that particular allegation, which goes unanswered, states a takings claim on its own. Taking that as true, the State has effected a pocketbook loss sufficient to invoke a question of just compensation, because its scheme allegedly "gives no weight to the [owner]'s use of the property." (D.I. 38 ¶ 115); *Tyler*, 598 U.S. at 647.

Should its substantive challenges fail, Defendants ask the Court to find Plaintiff's claims time-barred. (D.I. 43 at 15-16). Defendants argue this is proper because accrual begins when a party "knows or has reason to know of the injury that forms" the basis of a cause of action. (D.I. 43 at 15) (citing *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996)). Because Plaintiff apparently knew the Borquez property had been escheated years before the claims were paid, Defendants argue Plaintiff's claims are time barred under Delaware's two-year statute of limitations on Section 1983 claims. (D.I. 43 at 15); *Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017); 10 Del. C. § 8119.

Again, the Court is not convinced. True, an action accrues "when the plaintiff *knew or should have known* of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F. 3d 582, 599 (3d Cir. 1998) (emphasis added). But the Amended Complaint clearly states a timely moment of discovery as to both the takings and notice claims.

6

First, the takings claim. The Amended Complaint states that the "final determination" as to whether or not Plaintiff would be compensated on his claim of unclaimed property was issued in "early 2023." (D.I. 38 ¶ 15). And a takings claim begins to run, for § 1983 purposes, when the government "takes property *without* compensation." *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 202 (2019) (emphasis added). The Amended Complaint plausibly states Plaintiff's expectation that Delaware would pay on his unclaimed property; indeed, he engaged counsel and communicated with Delaware for years to clarify the matter. (D.I. 38 ¶¶ 107-09). Yet it was only when the State issued its final determination, in early 2023, that he alleges the taking was made without compensation. (*Id.* ¶¶ 112-14). Accordingly, Plaintiff alleges he only knew his property would be taken without compensation in early 2023, and the takings claim is timely as alleged. *Knick*, 588 U.S. at 201.

Second, the notice claim. Again, at the motion to dismiss stage, the Amended Complaint need only "assert facts that affirmatively and plausibly suggest" the claim is viable. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F. 3d 235, 244 (3d Cir. 2012). True, as Defendants suggest, the Amended Complaint might suggest that Plaintiff knew some of the property at issue was taken years before the Amended Complaint was filed. (D.I. 41 at 4); (D.I. 38 ¶ 108) ("Finally, after years of back-and-forth communications…"). But more importantly, and unrebutted by Defendants, the Amended Complaint then immediately asserts the discovery of *yet more* shares claimed by Plaintiff, the earliest possible discovery of that property being January 20, 2023. (*Id.* ¶¶ 109-110). That allegation alone clearly pleads a claim within the statute of limitations sufficient to deny the motion to dismiss. 10 Del. C. § 8119.

Defendants raise a host of arguments as to why the Amended Complaint should be dismissed. But it is well-pled, and ably withstands most of Defendants' arguments. So the Court

will not dismiss the Amended Complaint for lack of standing, timeliness, or failure to state a claim, and now turns to its concern regarding the Eleventh Amendment.

### B.      The Eleventh Amendment

Defendants invoke the Eleventh Amendment to warrant dismissal of the Amended Complaint.[1]  Defendants state the Plaintiff is, despite couching his claims to the contrary, seeking a damages award from the State's treasury.  (D.I. 45 at 3-4).  Ordinarily, the Eleventh Amendment precludes such a judgment, because this court's remedial power "may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).  But in escheat cases such as this, there is a caveat: if the Plaintiff seeks recovery out of a state's specially-earmarked fund for escheat claims, then those are damages drawn from a fund that is custodial in nature, whose administrators are not protected by the Eleventh Amendment.  *See Salvato v. Harris*, No. 21-12706 (FLW), 2022 WL 1224962 at *6 (D. N.J. April 26, 2022); (citing *Arnett v. Strayhorn*, 515 F. Supp. 2d 690, 696 (W.D. Tex. 2006)).  Here, the Amended Complaint plainly seeks payment from the Escheat Special Fund.  (D.I. 38 ¶¶ 135, 136) ("This Escheat Special Fund is statutorily designed for cases such as this . . . Plaintiff [] seek[s] to be made whole from those set-aside funds that have not flowed into Delaware's treasury.") (emphasis in original omitted).

Defendants argue the Escheat Special Fund is, despite its name, not actually a special fund at all.  (*See* D.I. 45 at 4).  Apparently, say Defendants, the only way for the Escheat Special Fund to actually pay Plaintiff's claim is if "the funds the Plaintiff seeks would deplete Delaware's general fund." (*Id*).  Were that the case, and damages must first come from the general fund, then

---

[1]      The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

the Eleventh Amendment would presumably apply, and preclude Plaintiff from receiving money damages.  To the contrary, the Amended Complaint alleges that the fund is actually composed of exclusively set-aside funds, with annual excess proceeds from unclaimed property simply being deposited into the Escheat Special Fund as a "reserve fund." (D.I. 38 ¶¶ 134-36).  Considering both the Amended Complaint and the DUPL, it is unclear how the allotment or payment of monies from the Escheat Special Fund actually operates, and whether the Eleventh Amendment applies. 29 Del. C. § 6102(w), for example, clearly defines the fund as one "to be allocated to a reserve fund for extraordinary escheat claims."  Yet the DUPL requires claims made under the statute be paid first through the State's General Fund; and that applies only to claims made to the State Escheator under the DUPL, which would presumably not apply to Plaintiff's Fifth and Fourteenth Amendment claims.  *See* 12 Del. C. §§ 1165, 1168.

What *is* clear to the Court is that the Escheat Special Fund's operation is decidedly unclear. Clarifying that issue is relevant to the case and can be resolved in relatively short order. Accordingly, the parties are directed to meet and confer and submit a joint schedule for conducting expedited discovery regarding the Escheat Special Fund.  *See Schramm v. Mayrack*, No. 22-1443 (MN), 2023 WL 6387889, *8 (D. Del. Sept. 29, 2023) (ordering expedited briefing on a potentially case-dispositive issue).

## IV.    CONCLUSION

THEREFORE, for the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (D.I. 42) is DENIED.

IT IS FURTHER ORDERED that, within thirty days of the date of this Order, the parties are directed to meet and confer and submit a joint schedule for conducting expedited discovery related to the operation of the Escheat Special Fund.

_Maryellen Noreika_
The Honorable Maryellen Noreika
United States District Judge

10